FILED
United States Court of Appeals
Tenth Circuit

**December 20, 2023**

**Christopher M. Wolpert**
**Clerk of Court**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

_____

BRUCE MCWHORTER,

    Petitioner,

v.

FEDERAL AVIATION
ADMINISTRATION, Michael Whitaker,
Administrator, *

    Respondent.

No. 23-9506

_____

**Appeal from the Federal Aviation Administration**
**(FAA No. 2021NM030020)**

_____

Submitted on the briefs:†

Stephenson D. Emery, Williams, Porter, Day & Neville P.C., Casper, Wyoming, for Petitioner.

Casey E. Gardner, Office of the Chief Counsel, Federal Aviation Administration, Washington, D.C., for Respondent.

_____

    * On October 27, 2023, Michael Whitaker became Administrator of the Federal Aviation Administration, replacing former Acting Administrator Billy Nolen. By operation of Federal Rule of Appellate Procedure 43(c)(2), Mr. Whitaker has been substituted as the Respondent in this case.

    † After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist in the determination of this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument.

_____

Before **BACHARACH**, **BRISCOE**, and **McHUGH**, Circuit Judges.

_____

**McHUGH**, Circuit Judge.

_____

In July 2022, the Federal Aviation Administration ("FAA") revoked Bruce McWhorter's mechanics certification after learning he had not replaced certain components of an aircraft's engine despite having made a maintenance logbook entry stating that he performed a "major overhaul[]" of the engine. Agency Record at 1–6. Mr. McWhorter appealed the revocation order to an administrative law judge, who affirmed the order. Mr. McWhorter then sought to appeal the administrative law judge's decision to the National Transportation Safety Board ("NTSB"). Although Mr. McWhorter filed his notice of appeal with the NTSB on time, he failed to timely serve the FAA with his notice of appeal. The FAA moved to dismiss Mr. McWhorter's appeal to the NTSB for failure to effect timely service on the FAA. In response, Mr. McWhorter's counsel described the shortcoming as an "administrative oversight" because he "inadvertently failed to forward a copy of the notice to the [FAA]." *Id.* at 614. The NTSB attributed Mr. McWhorter's counsel's shortcoming to Mr. McWhorter, concluded he lacked good cause for the delay in service of process, and granted the FAA's motion to dismiss on October 6, 2022.

On January 25, 2023—111 days after the NTSB issued its final order— Mr. McWhorter petitioned for review of the NTSB's dismissal of his appeal, invoking this court's jurisdiction under 49 U.S.C. § 1153(b)(1). But, under that

statute, absent "a reasonable ground" for failing to do so, the "petition must be filed not later than 60 days after the order is issued." *Id.*

Our decisional law, while unpublished and therefore nonprecedential, has characterized the sixty-day time limit in § 1153(b) as "jurisdictional." We take this opportunity to clarify that § 1153(b)'s sixty-day time limit on seeking appellate review is a claim-processing rule rather than a "jurisdictional" requirement. Stated differently, a petitioner's failure to comply with the time limits prescribed by § 1153(b) does not affect this court's jurisdiction to entertain such an appeal. Rather, an untimely petition under that statute does no more than provide the FAA with a basis to argue that this court should deny the petition. Exercising jurisdiction under § 1153(b), we conclude Mr. McWhorter has not established the existence of "a reasonable ground" for delay in filing his petition for review, and we deny his petition as untimely.

## I.     JURISDICTION

Some thirty years ago, the Supreme Court instructed that a variety of procedural prerequisites to the filing of certain claims and appeals—for example, and as relevant here, time limits on the ability to seek appellate review of final agency orders—if not met, divest federal courts of jurisdiction to hear such matters. *See, e.g.*, *Stone v. I.N.S.*, 514 U.S. 386, 405 (1995) ("[S]tatutory provisions specifying the timing of review . . . are, as we have often stated, 'mandatory and jurisdictional . . . .'" (quoting *Missouri v. Jenkins*, 495 U.S. 33, 45 (1990))).

In more recent years, however, the Court has revisited its precedent implicating this issue:

> "Jurisdiction," this Court has observed, "is a word of many, too many, meanings." *Steel Co. v. Citizens for Better Env't*, 523 U.S. 83, 90 (1998). This Court, no less than other courts, has sometimes been profligate in its use of the term. For example, this Court and others have occasionally described a nonextendable time limit as "mandatory and jurisdictional." *See, e.g., United States v. Robinson*, 361 U.S. 220, 229 (1960). But in recent decisions, we have clarified that time prescriptions, however emphatic, "are not properly typed 'jurisdictional.'" *Scarborough v. Principi*, 541 U.S. 401, 414 (2004).

*Arbaugh v. Y & H Corp.*, 546 U.S. 500, 510 (2006).

In policing this line, the Court has "emphasized the distinction between limits on 'the classes of cases a court may entertain (subject-matter jurisdiction)' and 'nonjurisdictional claim-processing rules, which seek to promote the orderly progress of litigation by requiring that the parties take certain procedural steps at certain specified times.'" *Wilkins v. United States*, 598 U.S. 152, 157 (2023) (quoting *Fort Bend Cnty. v. Davis*, 139 S. Ct. 1843, 1846 (2019)). Decisions that treat mere claim-processing rules as "jurisdictional," the Court has noted, may actually *disrupt* rather than promote the orderly progress of litigation, because jurisdictional defects may be raised at any stage of litigation and on appeal—that is, even after courts and the parties devote substantial time and resources to the resolution of a dispute. *See id.* at 158 ("Given this risk of disruption and waste that accompanies the jurisdictional label, courts will not lightly apply it to procedures Congress enacted to keep things running smoothly and efficiently.").

4

To avoid the risk of contravening the Congressional intent of such claim-processing rules, we regard a procedural rule as "jurisdictional" *only if* "traditional tools of statutory construction . . . plainly show that Congress imbued a procedural bar with jurisdictional consequences." *United States v. Wong*, 575 U.S. 402, 410 (2015). Stated differently, courts may "treat a procedural requirement as jurisdictional only if Congress 'clearly states' that it is." *Wilkins*, 598 U.S. at 157 (quoting *Boechler v. Comm'r*, 142 S. Ct. 1493, 1497 (2022)). Application of this rule has "made plain that most time bars are nonjurisdictional."[1] *Id.* at 158 (quoting *Wong*, 575 U.S. at 410).

With respect to the lax application of the "jurisdictional" label in existing precedent, "the Supreme Court has instructed that 'drive-by jurisdictional rulings . . .have no precedential effect.'" *Gad v. Kan. State Univ.*, 787 F.3d 1032, 1040 (10th Cir. 2015) (quoting *Steel Co.*, 523 U.S. at 91). A "drive-by" jurisdictional ruling occurs when an opinion "simply states that 'the court is dismissing "for lack of jurisdiction" when some threshold fact has not been established.'" *Wilkins*, 598 U.S. at 160 (quoting *Arbaugh*, 546 U.S. at 511).

---

[1] In recent years, we have taken the opportunity to apply the Supreme Court's modern framework to other statutory requirements we had once deemed jurisdictional. *See, e.g.*, *Lincoln v. BNSF Ry. Co.*, 900 F.3d 1166, 1185 (10th Cir. 2018) (overruling precedent characterizing administrative exhaustion requirements as jurisdictional, explaining that a failure to exhaust "merely permits the [defendant] to raise an affirmative defense of failure to exhaust but does not bar a federal court from assuming jurisdiction over a claim").

This appeal implicates precisely such a "drive-by" jurisdictional ruling. In

*Nadal v. Federal Aviation Administration*, 276 F. App'x 780 (10th Cir. 2008)

(unpublished), we issued a brief, unpublished order dismissing an untimely petition

brought under § 1153(b)(1) for lack of jurisdiction. "[S]tatutory provisions specifying

the timing of review," we noted, are "mandatory and jurisdictional." *Id.* at 781

(quoting *Stone*, 514 U.S. at 405). While *Nadal*, as an unpublished decision, was

without precedential effect in the first instance, we now clarify that its

characterization of the sixty-day deadline as "jurisdictional," without elaboration, is

properly regarded as a "drive-by" jurisdictional ruling entitled neither to precedential

effect nor persuasive value.[2] *Contra* 10th Cir. R. 32.1(A) ("Unpublished decisions

are not precedential, but may be cited for their persuasive value.").

We have little trouble concluding the sixty-day time limitation in § 1153(b),

like most time bars, is devoid of anything approaching a clear statement that

Congress intended the time bar to have jurisdictional consequences. We begin with

the presumption that "most time bars are nonjurisdictional." *Wilkins*, 598 U.S. at 158

(quoting *Wong*, 575 U.S. at 410). With that starting point, the FAA must point to

---

[2] *Nadal v. Federal Aviation Administration*, 276 F. App'x 780 (10th Cir. 2008) (unpublished), is one of several decisions from the courts of appeal that summarily concluded that the sixty-day time limit in 49 U.S.C. § 1153(a) and (b) is jurisdictional. *See, e.g., Bennett v. Nat'l Transp. Safety Bd.*, 2 F. App'x 305, 306 (4th Cir. 2001) ("We therefore deny the petition for lack of jurisdiction because Bennett's petition was not timely filed."); *Tiger Int'l, Inc. v. Civil Aeronautics Bd.*, 554 F.2d 926, 931 n.11 (9th Cir. 1977) ("Time limitations for certiorari, appeal and review set out in statutes are uniformly regarded as jurisdictional.").

*something* in the statutory language that amounts to a "clear statement" that Congress intended to deviate from its general approach to claim-processing deadlines and render *this* time bar jurisdictional. But the FAA adduces no such language, and our review discloses none. Indeed, § 1153(b)(1) states that the "petition must be filed not later than 60 days after the order is issued," and the word "jurisdiction" is wholly absent from that subsection. Under this controlling standard, we hold that the procedural requirement in § 1153(b) to petition this court for review within sixty days after the issuance of a final order is not jurisdictional.[3]

## II.    "REASONABLE GROUNDS" FOR UNTIMELY PETITION

Having concluded that we may exercise jurisdiction over this appeal notwithstanding Mr. McWhorter's tardy petition, we must next determine whether he may defeat the denial of his untimely petition by establishing the existence of "reasonable grounds" that would excuse his delay. 49 U.S.C. § 1153(b)(1).

Mr. McWhorter asserts two bases as "reasonable grounds" for his untimely petition.[4] First, that he was unaware of his right to petition this court for review

---

[3] This conclusion is consistent with our sister circuits' interpretation of a markedly similar statute, 49 U.S.C. § 46110(a), which, like § 1153(b), prescribes a sixty-day deadline for petitions for review, but permits untimely petitions upon a showing of "reasonable grounds." *See Corbett v. Transp. Sec. Admin.*, 767 F.3d 1171, 1178 (11th Cir. 2014) ("[T]he 60-day deadline [in § 46110(a)] is not jurisdictional."); *Avia Dynamics, Inc. v. F.A.A.*, 641 F.3d 515, 519 (D.C. Cir. 2011) ("[W]e hold that the sixty-day deadline [in § 46110(a)] does not constitute a jurisdictional bar.").

[4] Mr. McWhorter also suggests, without citation to authority, that his untimely petition to this court resulted in no prejudice to the FAA. But we cannot see how this assertion could inform our "reasonable grounds" analysis, where, by its plain terms,

7

because his counsel neglected to inform him of it. And second—and relatedly—that his counsel abandoned him following the dismissal of his NTSB appeal, and he was consequently forced to proceed *pro se* for the duration of the sixty-day deadline to file his petition. Neither of these circumstances amount to "reasonable grounds."

While there is scant case law giving meaning to "reasonable grounds" in § 1153(b), there is a wealth of authority animating that standard in the substantially similar context of 49 U.S.C. § 46110(a). Under § 46110(a), courts addressing this standard "have 'rarely found reasonable grounds'" for petitions filed after sixty days have elapsed. *Nat'l Fed'n of the Blind v. U.S. Dep't of Transp.*, 827 F.3d 51, 57 (D.C. Cir. 2016) (quoting *Elec. Privacy Info. Ctr. v. F.A.A.*, 821 F.3d 39, 42–44 (D.C. Cir. 2016)). Indeed, the weight of authority holds that only "[a]gency-created confusion" can satisfy that standard. *Tulsa Airports Improvement Tr. v. F.A.A.*, 839 F.3d 945, 950 (10th Cir. 2016) (collecting authority recognizing agency-created confusion as a basis for "reasonable grounds"); *see Howard Cnty. v. F.A.A.*, 970 F.3d 441, 450 (4th Cir. 2020) ("[O]ur sister circuits have generally found reasonable grounds . . . only where . . . the FAA left the parties 'with the impression that it would address their concerns by replacing its original order with a revised one' or otherwise 'created confusion' about the finality of its order" (quoting first *City of Phoenix v. Huerta*, 869 F.3d 963, 970 (D.C. Cir. 2017), then *Tulsa Airports Improvement Tr.*, 839 F.3d

---

§ 1153(b) focuses only on the circumstances that caused Mr. McWhorter's procedural default.

at 950)); *Greater Orlando Aviation Auth. v. F.A.A.*, 939 F.2d 954, 960 (11th Cir. 1991) (holding that confusion created by the FAA "present[ed] reasonable grounds" for petitioner's delay), *abrogated on other grounds by Henderson v. Shinseki*, 562 U.S. 428, 438 (2011), *as recognized in Corbett v. T.S.A.*, 767 F.3d 1171, 1174 (11th Cir. 2014). Meanwhile, "[i]n cases where the petitioner 'is primarily to blame for the delay' . . . courts have generally 'refused' to find reasonable grounds, even where the delay resulted from 'a petitioner's honest and understandable mistake.'" *Howard Cnty.*, 970 F.3d at 450 (quoting *Howard Cnty. v. FAA*, 818 F. App'x 224, 228 (4th Cir. 2020) (unpublished)). Mr. McWhorter makes no argument that the NTSB acted in ways that obscured the final nature of the dismissal of his appeal to that board, and he thus cannot avail himself of this route to establishing "reasonable grounds."

Moreover, a failure to comply with a procedural requirement is not generally excused when non-compliance is caused by counsel's deficient representation. *See Link v. Wabash R.R. Co.*, 370 U.S. 626, 633–34 (1962) ("Petitioner voluntarily chose this attorney as his representative in the action, and he cannot now avoid the consequences of the acts or omissions of this freely selected agent."); *Gripe v. City of Enid*, 312 F.3d 1184, 1189 (10th Cir. 2002) ("Plaintiff argues against the harshness of penalizing him for his attorney's conduct. But there is nothing novel here. Those who act through agents are customarily bound by their agents' mistakes. It is no different when the agent is an attorney."). And Mr. McWhorter's *pro se* status during the sixty-day period does not exempt him from compliance with ordinary procedural rules. *See Ogden v. San Juan Cnty.*, 32 F.3d 452, 455 (10th Cir. 1994) ("[A]n

9

appellant's *pro se* status does not excuse the obligation of any litigant to comply with [procedural rules].").

Because Mr. McWhorter advances no judicially cognizable bases for his untimely petition for review, we conclude he has failed to establish "reasonable grounds" for the same.

## III. CONCLUSION

We DENY Mr. McWhorter's petition for review as untimely.